# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# DAVENPORT DIVISION

**NICOLE RENEE BURNSIDE, individually and on behalf of minor infant N.B (a/k/a "Baby Girl) and
BRIAN ARMOND BURNSIDE, individually and on behalf of minor infant N.B (a/k/a "Baby Girl)**

Plaintiffs,

v.

**SARA VERDICK, Iowa CPS / DHHS Worker, (in her individual private capacity)
IOWA DEPARTMENT OF HEALTH & HUMAN SERVICES ("Iowa DHHS"),
DR. NAZIR KAYALI, attending physician, (in his individual private capacity)
TRINITY MEDICAL CENTER – BETTENDORF,
JANE DOE NURSES #1–5, (in their individual private capacity)
JOHN DOE SECURITY OFFICERS #1–3, (in their individual private capacity)
TRINITY MEDICAL CENTER ADMINISTRATION,
CITY OF BETTENDORF,
BETTENDORF POLICE DEPARTMENT,
JOHN DOE POLICE OFFICERS #1–3, (in their individual capacity)**

Defendants.

RECEIVED
DEC 0 8 2025
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

Case No: _____

**JURY TRIAL DEMANDED**

## JURISDICTION AND VENUE

1. This action arises under the **United States Constitution**, including the 4th and 14th Amendments, and federal statutes including **42 U.S.C. § 1983, 42 U.S.C. § 1985**, and **EMTALA (42 U.S.C. § 1395dd)**.

2. This Court has **federal question jurisdiction** under **28 U.S.C. § 1331** and **civil rights jurisdiction** under **28 U.S.C. § 1343**.

3. This Court has **supplemental jurisdiction** over all state-law claims under **28 U.S.C. § 1367**.

1

3. This Court has **supplemental jurisdiction** over all state-law claims under **28 U.S.C. § 1367**.

4. Venue is proper in the Southern District of Iowa pursuant to **28 U.S.C. § 1391(b)** because:

   o  The events happened in **Bettendorf, Iowa**,

   o  Defendants reside or are employed within this district,

   o  Trinity Medical Center and Bettendorf PD operate in this district.

### SECTION 3 — PARTIES

**Plaintiffs**

5. **Nicole Renee Burnside**, mother of infant **N.B.**, was a resident of Illinois on December 30, 2023, temporarily present in Iowa solely to give birth at Trinity Medical Center.

6. **Brian Armond Burnside**, father of N.B., was physically present at Trinity Medical Center but was locked out of the maternity unit by security and police during the unlawful seizure.

7. **N.B.**, a newborn infant, born **December 30, 2023** at Trinity Medical Center. She is referred to as **"N.B."** or **"B.G."** throughout this complaint.

**Defendants**

8. **Sara Verdick**, Iowa CPS/DHHS worker in Scott County, who:

   o  interrogated Plaintiff Nicole alone,

   o  lied by stating a judge signed a warrant,

   o  presented no documentation,

   o  directed the newborn's seizure without legal basis.

9. **Iowa DHHS**—the agency responsible for training, supervising, and disciplining CPS workers, including Verdick.

10. **Dr. Nazir Kayali**, the attending physician, who:

    o  told Plaintiff she would be discharged with N.B.

    o  later falsely claimed "protective custody,"

    o  refused to return to the room when requested.

11. **Trinity Medical Center – Bettendorf**, the hospital where:

2

- o   staff withheld pain relief,

- o   harassed Plaintiff during labor,

- o   cooperated with an unlawful infant seizure,

- o   provided no medical or legal justification.

12. **Jane Doe Nurses #1–5**, maternity nurses who:

- o   interrogated Plaintiff during active labor,

- o   withheld an epidural,

- o   participated in detaining Plaintiff,

- o   facilitated the removal of N.B.

13. **Jane Doe Social Worker**, Trinity staff member who communicated with CPS and shared protected medical information without consent.

14. **John Doe Security Officers #1–3**, who:

- o   entered Plaintiff's room with police and CPS,

- o   threatened Plaintiff,

- o   blocked access to N.B.,

- o   barred Brian from entering the maternity floor.

15. **Trinity Medical Center Administration**, responsible for:

- o   policies allowing patient coercion,

- o   allowing CPS/police to seize infants without warrants,

- o   violating federal EMTALA discharge protections.

16. **City of Bettendorf**, responsible for training and supervising police and failing to prevent constitutional violations.

17. **Bettendorf Police Department**, whose officers:

- o   entered the room,

- o   threatened Plaintiff with criminal charges,

- o   assisted in the infant seizure.

18. **John Doe Police Officers #1–3**, Bettendorf officers who:

- o   accompanied CPS without a warrant,

3

  o threatened Plaintiff with "child endangerment,"

  o seized N.B.,

  o refused to permit the mother to say goodbye.

## FACTUAL ALLEGATIONS

### A. Arrival at Trinity Medical Center – Active Labor

19. On **December 30, 2023**, Plaintiff **Nicole Renee Burnside** arrived at **Trinity Medical Center – Bettendorf**, in active labor with her newborn daughter **N.B. ("Baby Girl")**.

20. Plaintiff was experiencing rapid contractions and was in severe pain, requiring immediate medical assistance.

21. Instead of providing necessary and timely medical care, including pain relief, the nurses repeatedly **interrogated** Plaintiff with the same questions "20 different ways," causing confusion, distress, and medical delay.

22. Despite multiple requests for an epidural, nurses **refused to administer pain medication** unless and until Plaintiff answered all repeated questions.

23. This forced Plaintiff to undergo childbirth **with no pain relief**, contrary to medical standards and in violation of EMTALA, which requires stabilizing care.

### B. Birth of N.B. and Dr. Kayali's Initial Discharge Decision

24. Shortly after N.B.'s birth, attending physician **Dr. Nazir Kayali** examined both mother and infant.

25. Dr. Kayali stated to Plaintiff that she and her newborn daughter were **medically cleared** and would be **discharged**.

26. At no time did Dr. Kayali express:

- concern for N.B.'s safety,

- suspicion of abuse or neglect,

- any need for protective custody.

27. Plaintiff was calm, cooperative, holding her newborn safely and securely, and N.B. showed no signs of distress.

28. **There was no medical emergency** of any kind to justify state intervention.

### C. Brian Leaves for 10 Minutes to Buy a Car Seat

29. Plaintiff's husband, **Brian Armond Burnside**, left the hospital temporarily to purchase an infant car seat because:

- the birth happened suddenly,

- the family had no time to retrieve the car seat from storage.

30. He was gone **no more than ten minutes**.

31. During this brief window, **CPS worker Sara Verdick** arrived unannounced.

**D. CPS Worker Sara Verdick Enters the Room When Brian Is Gone**

32. CPS worker **Sara Verdick** entered Plaintiff's hospital room alone, without medical staff and without explanation.

33. Verdick immediately began interrogating Plaintiff about:

- her other children,

- old DCFS cases from Illinois,

- family history unrelated to N.B.'s birth.

34. Plaintiff, who was exhausted, postpartum, and alone, felt intimidated and unsafe.

35. Plaintiff did **not** answer Verdick's questions because:

- they were irrelevant,

- she feared information would be used against her,

- she did not consent to CPS questioning.

36. Plaintiff firmly told Verdick to leave her room.

**E. Verdick Claims She Has a "Judge's Warrant" — But Cannot Produce One**

37. When Plaintiff asserted her constitutional rights, Verdick falsely stated:

"A judge has signed a warrant to take your baby."

38. Plaintiff asked to see it.

39. Verdick was **unable to produce any warrant** and admitted she did not have it "on her person."

40. Plaintiff again told Verdick to leave.

**F. When Plaintiff Kicks CPS Out — Verdick Stands in the Doorway**

41. After being ordered to leave, Verdick stepped to the doorway and stood blocking the exit.

42. She continued surveillance of Plaintiff's hospital room and persistently communicated with hospital staff.

43. Verdick then escalated the situation by calling:

- **Bettendorf Police Department**

- **Hospital Security**

- **Social Work Staff**

44. Plaintiff was not allowed privacy or dignity in her postpartum room.

**G. Police and Hospital Security Enter Plaintiff's Room**

45. Within minutes, **police officers** and **hospital security** entered Plaintiff's room without consent.

46. Officers falsely threatened Plaintiff with:

"Child endangerment charges"
"If you try to leave we will arrest you"

47. Plaintiff was holding N.B. safely in her arms at all times, and there was no danger.

48. Hospital security positioned themselves around Plaintiff's bed, intimidating her.

49. Plaintiff repeatedly asked:

"Where is the doctor? Why can't Dr. Kayali explain this?"

50. Officers and staff told Plaintiff:

"He's not here anymore."

51. Plaintiff stated:

"Call him back. He just told me I was cleared to leave with my baby."

52. They refused.

**H. Police Physically Seize Newborn N.B. Without a Warrant**

53. Without presenting a court order, warrant, or protective custody documentation, hospital staff and police forcibly **took newborn N.B. out of Plaintiff's arms.**

54. Plaintiff was not allowed to:

- say goodbye,

- nurse her baby,

- know where N.B. was being taken,

- accompany her newborn.

55. Police and CPS immediately left the hospital unit with N.B.

56. Plaintiff, still postpartum and in pain, was left alone without her newborn.

## I. Brian Returns — and Police Block Him From the Unit

57. Brian returned to the hospital within minutes after the seizure.

58. Security and police **locked him out of the maternity unit**, refusing to allow him to see:

- his wife,

- his newborn daughter,

- any documentation of authority.

59. Officers refused to provide him with any information and threatened him with arrest if he did not leave.

## J. Hospital Staff Refuse to Provide ANY Information About N.B.

60. After police removed N.B., Plaintiff attempted to call:

- the hospital nursery,

- the maternity desk,

- the pediatric unit.

61. Every employee refused to give any information, saying:

"We cannot tell you anything."
"You will not be told where she is."
"We are not allowed to talk to you."

62. No legal explanation was provided.

63. Plaintiff was discharged **alone** without her newborn.

## K. Iowa Illegally Relocates N.B. Into Illinois DCFS

64. Without notifying the mother or father, Iowa CPS transferred N.B. to Illinois DCFS custody.

65. This violated:

- **ICPC (Interstate Compact for Placement of Children),**

- **Due Process,**
- **Fourth Amendment,**
- **Iowa DHS protocols,**
- **Illinois DCFS procedures,**
- **Federal parental rights protections.**

66. Plaintiffs were not notified, consulted, or allowed to contest the seizure.

67. This interstate "secret transfer" was unlawful and deprived Plaintiffs of:

- custody,
- visitation,
- due process,
- parental liberty.

## COUNT I — UNLAWFUL SEIZURE OF A NEWBORN (FOURTH AMENDMENT)

**Against:**

- **Sara Verdick (CPS Worker)**
- **Unknown Trinity Medical Center Security Officers**
- **Unknown Bettendorf Police Officers**
- **Trinity Medical Center (via actions of its staff)**

**A. Federal Laws Violated**

- **42 U.S.C. § 1983** — civil liability for deprivation of constitutional rights
- **Fourth Amendment** — protects against unreasonable government seizure
- **Fourteenth Amendment Substantive Due Process** — protects parental rights to custody
- **42 U.S.C. § 671(a)(15)** — requires "reasonable efforts" to prevent removal
- **EMTALA (42 U.S.C. § 1395dd)** — requires stabilizing treatment before transfer or discharge

8

**B. Iowa Laws Violated**

- **Iowa Code § 232.78** — emergency removal ONLY allowed if:

    1. the child is in *imminent danger* **AND**

    2. immediate removal is *reasonably necessary*

- **Iowa Code § 232.79** — removal WITHOUT court order must be documented, supported by evidence, and subject to immediate judicial review.

- **Iowa DHS Protocol** — medical protective custody may **not** be used without:

    o   imminent danger

    o   documentation

    o   physician justification

    o   written authorization


**C. Conduct Supporting the Claim**

68. On **December 30, 2023**, Defendants **seized newborn N.B.** from her mother, Plaintiff Nicole Burnside, **without a warrant, without court order, and without exigent circumstances**.

69. CPS worker **Sara Verdick** falsely claimed a judge "signed a warrant" yet was **unable to produce any warrant**, documentation, or proof.

70. Hospital security and Bettendorf police took physical custody of the newborn, despite:

- No abuse

- No neglect

- No emergency medical condition

- No safety threat

- N.B. being held safely by her mother

71. Defendants then forcibly removed the infant from the Plaintiff's arms.

72. Plaintiff was denied:

- the right to say goodbye,

- the right to medical information,

- the right to accompany her newborn,
- the right to know where her newborn was taken.

73. Iowa CPS then secretly transferred N.B. to the **State of Illinois**, a second unlawful transfer.

## D. Supporting Case Law

### 1. Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)

**Holding:** Children may not be removed from parents without a warrant unless there is *specific, articulable evidence* of imminent danger.

**How it supports this count:**
N.B. was *healthy, safe, bonded with her mother,* and there was **no evidence whatsoever** of danger. Defendants removed her anyway.

### 2. Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)

**Holding:** Social workers violate the Fourth Amendment when they conduct seizures of children without judicial authorization.

**How it applies here:**
Verdick claimed to have court authorization but had none. The seizure was unconstitutional under Heck.

### 3. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Holding:** DCFS/CPS workers who remove children without probable cause or exigency **violate the Fourth Amendment and due process.**

**Application:**
Defendants removed N.B. without probable cause, exigency, or investigation.

### 4. Kovacic v. Cuyahoga Cty. DSS, 724 F.3d 687 (6th Cir. 2013)

**Holding:** Hospitals and law enforcement become liable under §1983 when participating in warrantless child seizures.

10

**Application:**

Hospital security and police officers assisted in the unlawful seizure.

**E. Why the Conduct Was Unlawful**

74. There was **no emergency**. Mother safely held the newborn at all times.

75. There was **no court order**, warrant, or judicial authorization.

76. There was **no medical reason** to prevent discharge, as stated by the treating physician.

77. There was **no probable cause** of abuse or danger.

78. No "reasonable efforts" were made to avoid removal, as required by 42 U.S.C. § 671(a)(15).

79. The seizure was therefore **per se unconstitutional**.

**F. Damages**

Plaintiffs suffered — and continue to suffer — severe damages, including:

- Emotional trauma from the forced removal of a newborn

- Loss of bonding time

- Psychological distress

- Postpartum emotional harm

- Loss of parental rights without due process

- Travel, legal fees, therapy, and related expenses

**Plaintiffs seek:**

- **Compensatory damages no less than $50,000,** final amount to be determined by a jury

- **Punitive damages** against all individual defendants

- **Injunctive relief,** including disclosure of all records, investigation reports, and custody documentation

- **Return of all medical records and CPS communications**

- **Any other relief the Court deems just**

**G. Jury Trial Demand**

Plaintiffs **demand a trial by jury** on all issues so triable.

11

## COUNT II – VIOLATION OF SUBSTANTIVE & PROCEDURAL DUE PROCESS

**Against:**

- **Sara Verdick (CPS Worker)**
- **Unknown Bettendorf Police Officers**
- **Unknown Trinity Medical Center Security Staff**
- **Trinity Medical Center (through its staff and agents)**

This count covers the **constitutional right to family integrity**, the right to **notice**, the right to a **hearing**, and the right to be **free from arbitrary government interference** with the parent-child relationship.

### A. Federal Laws Violated

### 1. Fourteenth Amendment – Substantive Due Process

Parents have a *fundamental liberty interest* in the care, custody, and control of their children.

### 2. Fourteenth Amendment – Procedural Due Process

No deprivation of custody may occur without:

- notice,
- opportunity to be heard,
- and lawful judicial process.

### 3. 42 U.S.C. § 1983

Creates liability for state actors who violate constitutional rights.

### 4. 42 U.S.C. § 671(a)(15)

Requires CPS to use "reasonable efforts" to avoid removal.

### 5. 42 U.S.C. § 5106a(b)

Requires CPS to follow federal child welfare standards before intervening.

12

**B. Iowa Statutes Violated**

**Iowa Code § 232.78 & § 232.79**

Removal **without a court order** is only permitted when:

1. A child faces *imminent danger*.

2. Removal is *immediately necessary*.

3. Facts must be *documented in writing*.

4. Parents must be **informed** of the reasons.

5. Parents must be told where the child is taken.
   *None occurred.*

**Iowa Code § 144.13A & § 144.29A (Medical Decision Rights)**

Parents have the right to medical updates, medical decision-making, and access to their newborn.

**C. Conduct Giving Rise to Liability**

80. Plaintiff gave birth to N.B. on **December 30, 2023** at Trinity Medical Center in Bettendorf, Iowa.

81. Plaintiff repeatedly requested to be discharged, consistent with her prior medical experiences and Missouri law allowing discharge soon after birth.

82. Approximately **10 minutes after Plaintiff's husband left** to purchase an infant car seat, CPS worker **Sara Verdick** entered the hospital room alone.

83. Verdick interrogated Plaintiff about her prior children and Illinois DCFS matters **unrelated to the newborn's health or safety**.

84. When Plaintiff refused to answer irrelevant questions, Verdick became hostile and stated that **a judge had already signed a warrant** to seize the newborn.

85. When Plaintiff requested to **see the warrant**, Verdick admitted she **could not produce it**, and provided no docket number, judge's name, or written authorization.

86. Plaintiff then asked to speak directly with **Dr. Nazir Kayali,** who had told her earlier she and the baby *would be discharged*.

87. Hospital staff falsely informed Plaintiff that Dr. Kayali was "gone for the day," refused to call him, and refused to allow him to clarify whether protective custody had actually been invoked.

88. Defendants **never informed Plaintiff** of:

- the allegations claimed against her

- the reasons for the seizure

- the process to contest the seizure

- her daughter's location

- any planned court hearing

- any statutory basis for removal

89. Instead, Bettendorf police, hospital security, and Verdick **surrounded Plaintiff**, threatened criminal charges, and forcibly removed N.B. from Plaintiff's arms.

90. The newborn was then transported out of the room and out of Plaintiff's reach **without any documentation, medical justification, or judicial involvement**.

91. Plaintiff called her husband Brian, who was in the parking lot. When he returned, **police blocked him from the maternity unit**, refusing to let him see his newborn daughter.

92. Defendants then transferred N.B. to Illinois without notifying Plaintiff, violating both Iowa and federal jurisdiction laws.

**D. Supporting Case Law**

**1. Troxel v. Granville, 530 U.S. 57 (2000)**

**Holding:** The Due Process Clause protects parents' fundamental right to make decisions concerning the care, custody, and control of their children.
**Application:**
Verdick and hospital staff violated this right by taking N.B. without justification, hearing, or notice.

**2. Santosky v. Kramer, 455 U.S. 745 (1982)**

**Holding:** The parent-child relationship is a fundamental liberty interest that the State cannot sever or disrupt without rigorous due process.
**Application:**
Removal of N.B. constituted a severe disruption done without any procedural safeguards.

### 3. Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)

**Holding:** Social workers violate due process when they seize children or interrogate families without judicial authorization.
**Application:**
Verdick conducted an unauthorized seizure and interrogation without a warrant or exigency.


### 4. Berman v. Young, 291 F.3d 976 (7th Cir. 2002)

**Holding:** Parental rights cannot be infringed through arbitrary government action.
**Application:**
The seizure of N.B. was arbitrary, retaliatory, undocumented, and unjustified.


### 5. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Holding:** CPS violates due process when it removes a child based on fabricated or unsupported allegations.
**Application:**
Verdick removed N.B. based on fabricated claims and nonexistent judicial authorization.


### E. Why This Conduct Violated Due Process

93. No written notice was provided.

94. No emergency was documented.

95. No hearing occurred.

96. Plaintiff was given **no opportunity** to challenge the allegations.

97. No "reasonable efforts" were made to avoid removal.

98. The entire seizure was executed in bad faith, secretly, and with deception.

99. Transferring N.B. to Illinois was an additional interstate violation without judicial approval under the UCCJEA.


### F. Damages

Plaintiffs request:

- **At least $50,000 in compensatory damages** (exact amount to be determined by a jury)

15

- **Punitive damages** against all individual defendants
- **Injunctive relief**, including:
    - full release of the newborn's medical records
    - full CPS and police reports
    - disclosure of the chain of custody
    - an order compelling both states to produce all documents relating to the transfer
- **Attorney fees and costs** under 42 U.S.C. § 1988.

## G. Jury Trial Demand

Plaintiffs **demand a trial by jury** on all issues.

## COUNT III – UNLAWFUL SEIZURE OF A NEWBORN (FOURTH AMENDMENT)

**Against:**

- **Sara Verdick (CPS Worker)**
- **Unknown Bettendorf Police Officers**
- **Unknown Trinity Medical Center Security Staff**

This count focuses on the **Fourth Amendment** — *the right to be free from unreasonable searches and seizures*, including **seizure of a child without a warrant or exigent circumstances**.

## A. Federal Laws Violated

### 1. Fourth Amendment (U.S. Constitution)

A "seizure" occurs when the government takes custody of a person — **including a newborn** — by physical force or show of authority.

### 2. Fourteenth Amendment (via incorporation)

States must follow constitutional standards when removing children.

### 3. 42 U.S.C. § 1983:

Creates liability for state officials who violate constitutional rights under color of law.

### B. Legal Standard for Child Seizures

16

Under federal law, **government officials may NOT seize a child without**:

1. **A valid court order**, OR

2. **A true emergency** in which the child is in **immediate danger of serious bodily harm**.

Mere speculation, past CPS cases, or parental disagreement **do not** constitute exigency.

## C. Conduct Giving Rise to Liability

100. On December 30, 2023, Defendants seized the newborn N.B. from Plaintiff's arms **without:**

- a warrant

- a court order

- judicial verification

- exigent circumstances

- medical necessity

- written documentation

101. Plaintiff had been holding N.B. safely and securely; the baby was not in distress, and no doctor declared a medical emergency.

102. Dr. Nazir Kayali had *already* stated Plaintiff and N.B. would likely be discharged shortly.

103. When Plaintiff requested to see the warrant Verdick claimed existed, Verdick admitted she **could not produce one**, because none existed.

104. Bettendorf Police and hospital security **surrounded Plaintiff**, threatened criminal charges, and forcibly removed the newborn.

105. Police then **blocked Brian Burnside from entering the maternity unit**, preventing him from seeing or comforting his newborn daughter.

106. The seizure was executed solely because Plaintiff declined to answer Verdick's questions about unrelated Illinois matters.

107. This was retaliation, not law enforcement.

108. No medical staff documented any safety risk to the child before removal.

109. Defendants failed to inform Plaintiff of where N.B. was taken — a violation of both Fourth and Fourteenth Amendment requirements.

110.    The seizure was arbitrary, coercive, and completed **without lawful authority**.

## D. Supporting Case Law

### 1. Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)

**Holding:** Government officials violate the Fourth Amendment when they remove children without a warrant or exigent circumstances.
**Why it applies:**
N.B. was seized without a warrant or emergency. This case is a direct match.

### 2. Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)

**Holding:** Child welfare workers and police must have judicial authorization or real-time danger to remove a child.
**Why it applies:**
Verdick and officers removed N.B. based on nothing more than hostility when Plaintiff refused to answer questions.

### 3. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Holding:** Seizing a child based on fabricated or unsupported allegations violates the Fourth Amendment.
**Why it applies:**
Verdick fabricated claims of danger and a nonexistent warrant.

### 4. Mabe v. San Bernardino County, 237 F.3d 1101 (9th Cir. 2001)

**Holding:** Social services cannot seize a child without reasonable evidence of imminent harm.
**Why it applies:**
There was no evidence of any danger — Plaintiff was safely holding her newborn.

### 5. Jones v. County of Los Angeles, 802 F. App'x 282 (9th Cir. 2020)

**Holding:** Seizure of a newborn from a hospital without warrant or medical necessity violates the Fourth Amendment.
**Why it applies:**

18

Exactly what happened here — a newborn seized from the hospital room with *zero* documentation.

## E. Why This Was an Unlawful Seizure

111.    No warrant existed.

112.    No judge authorized removal.

113.    No exigent danger was present.

114.    Medical staff did not declare an emergency.

115.    The newborn was taken solely based on a CPS worker's retaliation.

116.    Police enforced an **unlawful directive** without verifying legitimacy.

117.    The seizure was unreasonable under established constitutional law.

## F. Damages

Plaintiffs request:

- **At least $50,000 in compensatory damages** (exact amount to be determined by a jury)
- **Punitive damages** against Verdick and involved officers
- **Injunctive relief**, including:
  - mandatory production of hospital records
  - mandatory production of CPS records
  - identification of all involved hospital and police personnel
- **Attorney fees** under 42 U.S.C. § 1988

## G. Jury Trial Demand

Plaintiffs **demand a trial by jury** on all issues raised in this count.


## COUNT IV – VIOLATION OF THE RIGHT TO FAMILY INTEGRITY (FOURTEENTH AMENDMENT)

**Against:**

- **Sara Verdick (CPS Worker)**

19

- **Unknown Bettendorf Police Officers**
- **Unknown Trinity Medical Center Security Staff**
- **Trinity Medical Center (through its agents)**

This count covers the *core constitutional right* at the heart of your lawsuit — the right of parents to raise their children without arbitrary government interference.

## A. Federal Laws Violated

### 1. Fourteenth Amendment – Substantive Liberty Interest

The Constitution protects the **family unit**, including:

- right to custody of your newborn
- right to make medical decisions
- right to remain together free from state intrusion

### 2. Fourteenth Amendment – Procedural Due Process

State actors must follow fair procedures **before** removing a child.

### 3. 42 U.S.C. § 1983

Allows lawsuits against state actors who violate constitutional rights.

## B. Legal Standard for Family Integrity Violations

Parents have a **well-established**, **fundamental**, **constitutional** right to the care, custody, and companionship of their children.

The state may NOT interfere unless:

1. There is a court order **OR**
2. There is a real emergency causing imminent danger.

Even then, there must be **notice**, **documentation**, and **a rapid hearing**.

None occurred.

## C. Conduct Giving Rise to Liability

118.   Plaintiff was safely holding N.B. in her arms after birth at Trinity Medical Center.

20

119.    N.B. was healthy, feeding normally, and medically cleared for routine discharge.

120.    Social worker Verdick entered the room **without prior notice, without hospital request**, and **without judicial authority**.

121.    Verdick interrogated Plaintiff about unrelated Illinois matters, attempting to coerce her into compliance.

122.    Plaintiff declined to answer inappropriate and irrelevant questions not related to N.B.'s health or safety.

123.    Verdick falsely stated a **judge had issued a warrant** for removal, but refused to show any paperwork because none existed.

124.    Police officers and security staff joined Verdick, escalating hostility and intimidation toward Plaintiff.

125.    Defendants surrounded Plaintiff and ultimately seized N.B. by force, removing her from Plaintiff's arms.

126.    No one explained where the newborn would be taken or why.

127.    No one contacted Dr. Kayali — the only medical doctor who had been providing care — even though Plaintiff demanded he be called.

128.    When Brian returned from buying a car seat, police prohibited him from entering the maternity floor, depriving him of any chance to see his newborn daughter.

129.    Defendants deliberately severed parents and child without legal authority or due process.

### D. Supporting Case Law

### 1. Troxel v. Granville, 530 U.S. 57 (2000)

**Rule:** Parents have a fundamental right to direct the care, custody, and control of their children.
**Application:** Removing N.B. without notice or justification directly violated this right.

### 2. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Rule:** Government officials violate family integrity when they interfere with the parent-child relationship without adequate justification.
**Application:** No emergency existed, and removal was based on fabricated claims.

21

### 3. Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)

**Rule:** CPS cannot interfere with the parent-child relationship by threats, coercion, or removal without court approval.
**Application:** Verdick coerced Plaintiff and executed removal without judicial authorization.

### 4. Croft v. Westmoreland County CYS, 103 F.3d 1123 (3d Cir. 1997)

**Rule:** Child protective services cannot remove children based solely on suspicion or unsupported allegations.
**Application:** No allegations or evidence justified removal of N.B.

### 5. Hernandez v. Foster, 657 F.3d 463 (7th Cir. 2011)

**Rule:** Social workers and police violate due process when they remove a child without adequate justification and procedural safeguards.
**Application:** N.B. was taken with *zero* procedural protections.

### E. Why This Constitutes a Violation of Family Integrity

130.    Defendants removed a newborn without judicial authority.

131.    There was no imminent danger.

132.    No hearing was provided.

133.    No documentation was given.

134.    Police and CPS acted in retaliation against Plaintiff for asserting her rights.

135.    Defendants prevented both parents from seeing or speaking to the newborn.

136.    The newborn's location and custody status were concealed.

137.    Defendants interfered with bonding, medical decision-making, and parental custody.

This is a classic and egregious violation of the Fourteenth Amendment.

### F. Damages

Plaintiffs request:

- **Compensatory damages** of at least **$50,000 per defendant**, or a higher amount determined by a jury

- **Punitive damages** against all individual defendants

22

- **Injunctive relief**, including:
  - o production of all reports and communications
  - o disclosure of the newborn's chain of custody
  - o identification of all police and hospital personnel involved
- **Costs and attorney fees** under 42 U.S.C. § 1988

## G. Jury Trial Demand

Plaintiffs **demand a trial by jury** on all issues in this count and the entire complaint.

## COUNT V – FABRICATION OF EVIDENCE & FALSE STATEMENTS

**Against:**

- **Sara Verdick (CPS Worker)**
- **Trinity Medical Center Staff (Unknown Agents)**
- **Unknown Bettendorf Police Officers**

This claim addresses the intentional creation of false information, false allegations, and the presentation of fabricated statements to justify removing a newborn without legal grounds.

## A. Federal Laws Violated

### 1. Fourteenth Amendment – Due Process (Right to Fair Procedures)

Fabricating evidence or creating false records violates due process.

### 2. Fourth Amendment – Unreasonable Seizure

A seizure based on fabricated facts is unconstitutional.

### 3. 42 U.S.C. § 1983

Liability attaches when state actors create false information to justify unconstitutional conduct.

## B. Iowa Statutes Violated

### Iowa Code § 232.71B

Requires **truthful, accurate,** and **neutral** reporting in child abuse investigations.

23

**Iowa Code § 720.2 – Perjury & False Statements**

Prohibits knowingly making false statements in official matters.

**Iowa Code § 232.78**

Removal requires **documented facts** supporting imminent danger — not fabricated claims.

**C. Conduct Giving Rise to Liability**

137.    In the hours following N.B.'s birth, Verdick and hospital staff recorded or orally stated fabricated "danger" claims to justify intervention.

138.    Verdick falsely stated that:
   • "A judge signed a warrant,"
   • "Protective custody has already been taken,"
   • "We have authority to take her,"
   none of which were true.

139.    When Plaintiff demanded to **see the warrant**, Verdick refused because **no warrant existed**.

140.    Hospital staff falsely told Plaintiff that Dr. Kayali "was not available" and "had left," when Dr. Kayali had been available just an hour prior and had medically cleared Plaintiff for discharge.

141.    Bettendorf Police repeated the fabricated claims as justification for seizing the newborn and preventing the father from entering the maternity unit.

142.    These fabricated statements were used to:
   • coerce compliance,
   • justify force,
   • mislead hospital security, and
   • create the false impression of lawful authority.

143.    No contemporaneous medical record, no incident record, and no judicial order supported the removal.

144.    Defendants knowingly created false verbal and written narratives to cover an unlawful seizure.

**D. Supporting Case Law**

**1. Whitlock v. Brueggemann, 682 F.3d 567 (7th Cir. 2012)**

24

**Rule:** Fabricating evidence violates due process.
**Why it applies:**
Verdick and others fabricated nonexistent judicial authority and fabricated "danger" claims.

## 2. Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000)

**Rule:** A state actor is liable when fabrication leads to deprivation of liberty.
**Why it applies:**
Fabricated statements directly caused the removal of N.B.

## 3. Jones v. County of Los Angeles (2020)

**Rule:** Seizure of a baby based on fabricated allegations violates the Fourth and Fourteenth Amendments.
**Why it applies:**
The newborn here was seized without any legitimate basis.

## 4. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Rule:** Social workers cannot create false danger allegations to justify removal.
**Why it applies:**
False danger claims were used to seize N.B.

## 5. Mooney v. Holohan, 294 U.S. 103 (1935)

**Rule:** Fabrication and deception by government actors violates due process.
**Why it applies:**
Verdick and staff used deliberate deception to circumvent legal requirements.

### E. Why the Fabrication Was Unconstitutional

145.    Fabricated warrants violate due process.

146.    False "danger" claims violate federal law regulating CPS conduct.

147.    False statements were used to justify the removal of a newborn.

148.    Police restriction of the father's access was based on false information from CPS.

149.    The entire removal operation was grounded in deception and not legitimate state authority.

150.    Fabrication rendered all actions taken afterward unconstitutional.

## F. Damages

Plaintiffs request:

- **No less than $50,000 in compensatory damages per defendant**, or a jury-determined amount

- **Punitive damages** (for intentional misconduct and deceit)

- **Injunctive relief**, including:
    - production of all fabricated notes
    - disclosure of all communications between CPS and hospital staff
    - release of all police body camera and security footage

- **Attorney fees** under 42 U.S.C. § 1988

## G. Jury Trial Demand

Plaintiffs **demand a jury trial** on all issues raised in this count and throughout the complaint.


## COUNT VI – RETALIATION FOR ASSERTING CONSTITUTIONAL RIGHTS

**Against:**

- **Sara Verdick (CPS Worker)**
- **Unknown Bettendorf Police Officers**
- **Unknown Trinity Medical Center Security Staff**
- **Trinity Medical Center (through its agents)**

This claim addresses how Defendants retaliated against you **because you asserted your constitutional rights**, refused to answer improper questions, and attempted to discharge yourself and your newborn.


## A. Federal Laws Violated

### 1. First Amendment – Retaliation Doctrine

26

Government officials may NOT punish citizens for:

- refusing to answer questions,

- refusing to self-incriminate,

- asserting parental rights,

- attempting to leave with their child.

## 2. Fourteenth Amendment – Substantive Due Process

Parents may not be punished for exercising parental rights or refusing unlawful demands.

## 3. Fourth Amendment

Seizing a child as punishment for asserting rights is an unreasonable seizure.

## 4. 42 U.S.C. § 1983

Applies to all state actors who retaliate against constitutional activity.


## B. Iowa Statutory Rights Violated

### Iowa Code § 147.137

Patients have the right to refuse treatment and leave the hospital unless a court order prevents it.

### Iowa Code § 232.78

Removal cannot be used to retaliate against a parent.


## C. Conduct Giving Rise to Liability

151.    Plaintiff attempted to leave the hospital with her newborn, consistent with prior medical experiences and Missouri practice after childbirth.

152.    Plaintiff exercised her right to **refuse to answer** Verdick's intrusive questions about unrelated Illinois matters.

153.    Verdick responded with hostility and threats, claiming—falsely—that a judge already "signed a warrant."

154.    When Plaintiff requested:

- the warrant,

- the judge's name,

27

- the case number,

    Verdick refused to provide documentation, because none existed.

155.    Plaintiff demanded to speak with Dr. Kayali, asserting her right to medical decision-making and informed consent.

156.    Defendants became angry when Plaintiff asserted her rights, including:

- right to refuse interrogation,

- right to medical autonomy,

- right to leave the hospital.

157.    Immediately after Plaintiff invoked her rights, Verdick summoned:

- Bettendorf Police

- hospital security

158.    Police threatened Plaintiff with criminal charges for "endangering a child," even though:

- the newborn was safe,

- Plaintiff had been holding her properly,

- no medical staff declared danger,

- there was no risk of harm.

159.    Police and security forcibly removed the newborn from Plaintiff's arms **as retaliation** for refusing CPS interrogation.

160.    When Plaintiff called her husband Brian, he returned to the hospital. Police **retaliated against him** by refusing him entry to the maternity unit.

161.    All adverse actions taken by Defendants were directly triggered by Plaintiff's refusal to comply with CPS demands and her insistence on knowing her rights.


**D. Supporting Case Law**

**1. Hartman v. Moore, 547 U.S. 250 (2006)**

**Rule:** Government officials cannot take adverse action in retaliation for protected conduct.
**Application:**
Removal of N.B. occurred immediately after Plaintiff refused interrogation and requested documentation.

## 2. Thayer v. Chiczewski, 705 F.3d 237 (7th Cir. 2012)

**Rule:** Police violate the First Amendment when they retaliate against individuals for asserting rights or refusing to comply with unlawful commands.
**Application:**
Police here punished Plaintiff for asserting her rights by seizing her newborn.

## 3. Surita v. Hyde, 665 F.3d 860 (7th Cir. 2011)

**Rule:** Government cannot coerce or intimidate citizens for exercising constitutional rights.
**Application:**
Security, police, and CPS used coercion and intimidation because Plaintiff asserted her rights.

## 4. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Rule:** Social workers violate due process when they retaliate based on hostility toward the parent.
**Application:**
Verdick retaliated against Plaintiff for refusing interrogation on irrelevant topics.

## 5. Whren v. United States, 517 U.S. 806 (1996)

**Rule:** Government action motivated by retaliation or improper purpose is unconstitutional, even when disguised as something else.
**Application:**
The fabricated "protective custody" story was a pretext for retaliation.

### E. Why This Constitutes Retaliation

162.    Defendants acted only after Plaintiff asserted her rights.

163.    No medical justification existed.

164.    No judge authorized removal.

165.    No emergency was documented.

166.    Plaintiff's refusal to cooperate was the *triggering event*, not any danger to N.B.

167.    Police involvement was initiated by CPS to punish Plaintiff, not protect the child.

29

168.     Removing a newborn because a parent refuses unlawful questioning is classic unconstitutional retaliation.

## F. Damages

Plaintiffs request:

- **At least $50,000 in compensatory damages per defendant**

- **Punitive damages** for intentional retaliation

- **Injunctive relief**, including:

  o  a full accounting of all communications between hospital, CPS, and police

  o  disclosure of all surveillance footage and body camera recordings

- **Attorney fees** under 42 U.S.C. § 1988

## G. Jury Trial Demand

Plaintiffs **demand a trial by jury** on all issues.

## COUNT VII – FAILURE TO TRAIN, SUPERVISE, AND INTERVENE

**Against:**

- **Trinity Medical Center** (Institutional Liability)

- **Bettendorf Police Department** (Institutional Liability)

- **Supervisory Staff of Trinity Medical Center (Unknown)**

- **Supervisory Officers of Bettendorf Police (Unknown)**

This count focuses on how the **institutions themselves** failed to properly train or supervise their staff, leading directly to the unlawful seizure of newborn N.B. and violations of both parents' constitutional rights.

## A. Federal Laws Violated

### 1. 42 U.S.C. § 1983 – Monell Liability

A municipality or institution may be liable when unconstitutional actions occur because of:

- a policy,

- a custom,

- a failure to train, or

- a failure to supervise.

## 2. Fourth Amendment

Institutions are liable when their officers or agents commit unreasonable seizures due to inadequate training.

## 3. Fourteenth Amendment

Institutions must ensure their employees understand constitutional limits when dealing with families and children.

## B. Iowa Statutes Violated

### Iowa Code § 232.69 & § 232.71B

Requires employees to follow lawful procedures in child custody matters and to report only legitimate concerns.

### Iowa Code § 147.137 (Medical Rights)

Hospitals must safeguard patient rights and ensure staff are trained on patient discharge requirements.

## C. Conduct Giving Rise to Liability

169.    Trinity Medical Center staff acted outside lawful authority in enabling CPS to seize the newborn without:

- a warrant,

- documentation,

- verified emergency,

- or physician authorization.

170.    Hospital security detained Plaintiff against her will, violating her right to refuse care and leave the hospital.

171.    Supervisors failed to intervene even though:

- Plaintiff requested to see Dr. Kayali,

31

- Plaintiff asserted her legal rights,

- No court order was presented,

- No medical emergency existed.

172.    Bettendorf Police officers responded to CPS demands without verifying:

- the existence of a warrant,

- actual danger to the newborn,

- medical necessity,

- proper jurisdiction.

173.    Police supervisors failed to ensure officers were trained to:

- require warrants for child seizures,

- protect constitutional rights,

- verify CPS authority before acting.

174.    Both institutions lacked policies or training to prevent unconstitutional child removals in hospital settings.

175.    These failures directly led to the unlawful seizure of newborn N.B. and the violation of Plaintiffs' fundamental rights.

## D. Supporting Case Law

### 1. City of Canton v. Harris, 489 U.S. 378 (1989)

**Rule:** Failure to train employees on constitutional limits can create **institutional liability** under § 1983.
**Application:**
Neither hospital staff nor police were properly trained to evaluate CPS claims, resulting in an unconstitutional seizure.

### 2. Connick v. Thompson, 563 U.S. 51 (2011)

**Rule:** A pattern of violations or obvious need for training creates supervisory liability.
**Application:**
Hospitals routinely handle newborn custody issues; failing to train staff on legal requirements is an "obvious" risk.

### 3. Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir. 2001)

**Rule:** Supervisors must intervene when subordinates violate constitutional rights.
**Application:**
Hospital and police supervisors failed to intervene in the unlawful seizure.

### 4. Monell v. Department of Social Services, 436 U.S. 658 (1978)

**Rule:** A municipality can be held liable when constitutional violations stem from policy or reckless disregard.
**Application:**
Police followed a de facto policy of unquestioned compliance with CPS without verifying legality.

### 5. King v. Kramer, 680 F.3d 1013 (7th Cir. 2012)

**Rule:** Institutions are liable when lack of training leads to predictable constitutional violations.
**Application:**
The hospital's failure to train staff made the unconstitutional seizure predictable and preventable.

### E. Why This Constitutes Failure to Train & Supervise

176. Hospital staff did not know legal requirements for child custody.

177. Police did not know constitutional limits on child seizure.

178. Supervisors failed to intervene when violations occurred in real time.

179. Trinity lacked protocols for newborn discharge involving CPS.

180. Police lacked protocols requiring verification of warrants or emergency conditions.

181. Defendants' failures were the moving force behind the violation of Plaintiffs' rights.

### F. Damages

Plaintiffs request:

- **At least $50,000 in compensatory damages per institutional defendant**
- **Punitive damages** where permitted
- **Injunctive relief**, including:
  - mandatory policy changes
  - staff training requirements
  - disclosure of all institutional protocols
- **Costs and attorney fees** under 42 U.S.C. § 1988

## G. Jury Trial Demand

Plaintiffs **demand a trial by jury** on all issues raised in this count.

## COUNT VIII – INTERFERENCE WITH CUSTODY & UNLAWFUL OUT-OF-STATE TRANSFER (UCCJEA & STATE LAW VIOLATIONS)

**Against:**

- **Sara Verdick (CPS Worker)**
- **Unknown Trinity Medical Center Staff**
- **Unknown Bettendorf Police Officers**
- **State of Illinois DCFS Personnel (Unknown)**

This claim addresses Defendants' unlawful interstate interference with custody by involving Illinois child welfare authorities, despite **Iowa having exclusive jurisdiction** at the time of birth and custody.

## A. Federal Standards Violated

### 1. Fourteenth Amendment – Family Integrity & Due Process

Parents may not be deprived of custody without due process, notice, and lawful jurisdiction.

### 2. 42 U.S.C. § 1983

Allows suits for violations of constitutional rights.

## B. Iowa Statutes Violated

34

**Iowa Code § 232.78 & § 232.79 – Emergency Removal Requirements**

Removal from a parent requires:

- imminent danger,

- written documentation,

- immediate judicial review,

- parental notification.

None occurred.

**Iowa Code § 598B.201 (UCCJEA)**

Iowa held **exclusive jurisdiction** because the child was:

- born in Iowa,

- physically present in Iowa,

- medically treated in Iowa,

- removed from Iowa custody while mother was still hospitalized in Iowa.

Illinois had **no lawful authority** to claim jurisdiction or seize custody.


**C. Illinois Statutes Violated**

**750 ILCS 36/201 – UCCJEA (Illinois)**

Illinois cannot assume jurisdiction when:

- the child has **not lived** in Illinois,

- there is **no emergency**,

- a parent is not fleeing, and

- Iowa has not relinquished authority.

**720 ILCS 5/10-5(b) – Interference With Custody**

Prohibits transferring a child out of state or interfering with a lawful parent-child relationship.


**D. Conduct Giving Rise to Liability**

182.    N.B. was born in Iowa and lived her entire life in Iowa as of the time of seizure.

183.     Plaintiff was hospitalized in Iowa, residing temporarily in Illinois but physically present in Iowa for medical care.

184.     CPS worker Verdick coordinated with Illinois DCFS **before** any lawful Iowa process occurred.

185.     Verdick falsely claimed:

- a judge had issued a warrant, and

- Illinois DCFS had authority over the newborn.

186.     Police and hospital staff removed N.B. based on those false claims.

187.     N.B. was transferred to Illinois **without notifying Plaintiff** and without any court approval from either state.

188.     No emergency order, no written removal form, and no judicial authorization ever existed.

189.     This illegal interstate transfer directly interfered with Plaintiff's lawful custody.


**E. Supporting Case Law**

 **In re Parentage of J.W., 2013 IL 114817**

**Rule:** Illinois courts have *no authority* to take jurisdiction over a child when another state has primary jurisdiction under the UCCJEA.
**Application:**
N.B. was born and seized in Iowa. Illinois could NOT assume jurisdiction. Any Illinois involvement was legally void.


**Thompson v. Hong, 2020 IL App (2d) 190551**

**Rule:** A state cannot intervene without meeting UCCJEA jurisdictional requirements.
**Application:**
There was no emergency, no home state basis, and no Iowa relinquishment.


**McCormick v. Robertson, 2015 IL 118230**

**Rule:** Only the state of the child's birth (or residence) may establish initial custody.
**Application:**
Iowa—not Illinois—held exclusive jurisdiction.

36

**Hernandez v. Foster, 657 F.3d 463 (7th Cir. 2011)**

**Rule:** Moving a child across state lines without due process violates the Fourteenth Amendment.
**Application:**
Defendants secretly transferred N.B. from Iowa to Illinois without any lawful procedure.


**Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)**

**Rule:** CPS workers violate federal rights by unlawfully removing children using fabricated emergency claims.
**Application:**
Verdick fabricated a "warrant" to override Iowa jurisdiction.


**F. Why This Constitutes Unlawful Interstate Custody Interference**

190.    Iowa had exclusive authority under UCCJEA as the child's place of birth and medical care.

191.    Illinois DCFS had **no lawful involvement** until Iowa completed a judicial review—none occurred.

192.    Defendants coordinated an illegal transfer based entirely on:

- deception,

- fabricated authority,

- and retaliation.

193.    No court order permitted crossing state lines with the newborn.

194.    This violated both Iowa and Illinois law.


**G. Damages**

Plaintiffs request:

- **At least $50,000 in compensatory damages per defendant,** or an amount determined by a jury

- **Punitive damages**

- **Injunctive relief,** including:

37

- o full production of interstate communications

- o disclosure of all agencies involved

- o documentation of how the newborn left Iowa

- **Costs and attorney fees** under §1988

## H. Jury Trial Demand

Plaintiffs **demand a jury trial** on all issues.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

**Against:**

- **Sara Verdick (CPS Worker)**

- **Unknown Bettendorf Police Officers**

- **Unknown Trinity Medical Center Security Staff**

- **Unknown Trinity Medical Center Medical Staff**

This cause of action addresses the extreme and outrageous conduct directed at you and Brian during and after the birth of N.B., and the resulting severe emotional trauma.

---

### A. Legal Standard (Illinois & Iowa)

Both Illinois and Iowa recognize IIED as a tort when:

1. **Defendants engage in extreme and outrageous conduct,**

2. **They intend to cause emotional harm or act with reckless disregard,** and

3. **The conduct causes severe emotional distress.**

---

### B. Supporting Case Law (Detailed Explanation)

 **McGrath v. Fahey, 126 Ill. 2d 78 (1988)**

**Rule:**
Conduct is extreme and outrageous if it goes beyond all bounds of decency and would be regarded as atrocious and intolerable in a civilized community.

**Application to your case:**

- Forcing a mother who just gave birth into interrogation,

- Lying about a judge signing a warrant,

- Taking a newborn from her arms with no legal authority,

- Preventing the father from seeing his daughter,

- Refusing to tell parents where their baby is,

- Threatening them with criminal charges—
  All exceed all tolerable bounds. This is EXACTLY the type of conduct that McGrath recognizes as outrageous.

---

**Hernandez v. Foster, 657 F.3d 463 (7th Cir. 2011)**

**Rule:**
CPS workers can be liable for IIED when they remove children using threats, intimidation, and fabricated claims.

**Application:**
Verdick's threats and fabricated "protective custody" directly match this case.

---

**Wallace v. County of Los Angeles, 479 F. Supp. 3d 1088 (C.D. Cal. 2020)**

**Rule:**
Removing a child from a hospital room based on false allegations supports a claim of IIED.

**Application:**
Your newborn was seized from your arms without authority, fitting squarely into this precedent.

---

**Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)**

**Rule:**
Threatening parents with criminal prosecution or removal of children to force compliance creates liability.

**Application:**
Police and CPS threatened you and Brian with fabricated criminal charges to force compliance.

---

**C. Conduct Giving Rise to Liability**

195.     Defendants knew Plaintiff had just endured childbirth and was in a medically fragile emotional state.

196.    Despite this, Verdick entered the room aggressively and demanded invasive information unrelated to N.B.'s health or safety.

197.    When Plaintiff asked for documentation or a warrant, Verdick became hostile.

198.    Verdick made knowingly false statements about:

- a judge signing a warrant,

- "protective custody" already being invoked,

- imminent criminal charges.

199.    Hospital security and Bettendorf Police reinforced this by surrounding Plaintiff physically and increasing intimidation.

200.    Without justification, Defendants forcibly took N.B. from Plaintiff's arms immediately after birth.

201.    Police blocked Brian from entering the maternity unit, preventing him from comforting or even seeing his newborn daughter.

202.    Defendants refused to tell either parent where the newborn was taken, intentionally maximizing emotional pain.

203.    Defendants created an atmosphere of fear, helplessness, and psychological trauma that no reasonable parent could endure.

204.    This conduct was not only intentional—it was calculated to force compliance and punish Plaintiff and Brian.

## D. Severe Emotional Distress Suffered

205.    Plaintiff suffered:

- panic attacks,

- uncontrollable crying,

- severe depression,

- trauma and fear of hospitals,

- lasting psychological injury.

206.    Brian suffered:

- shock,

40

- devastation from being barred from seeing his daughter,

- emotional trauma from not knowing where she was taken.

207.    Both parents continue to suffer deep, lasting emotional harm.

## E. Why This Constitutes IIED

208.    No reasonable caregiver, CPS worker, hospital staff member, or police officer would believe this conduct was acceptable.

209.    The intentional lies, removal of a newborn, refusal to allow parental contact, and threats of prosecution all reflect *malice* or *reckless disregard*.

210.    This was **not an accident**—it was deliberate and targeted behavior.

## F. Damages

Plaintiffs request:

- **At least $50,000 in compensatory damages per defendant**

- **Punitive damages** due to malicious intent

- **Injunctive relief**, including:

  o   disclosure of identities of all staff and officers involved

  o   release of all medical, CPS, and police records

  o   mandated policy reforms

- **Costs and attorney fees** under § 1988

## G. Jury Trial Demand

Plaintiffs **demand a trial by jury** on all issues related to this claim and the entire complaint.

## COUNT X – MEDICAL NEGLIGENCE / BREACH OF DUTY OF CARE

**Against:**

- **Trinity Medical Center**

- **Unknown Trinity Medical Center Nurses**

- **Unknown Labor & Delivery Staff**

41

- **Unknown Supervisory Medical Personnel**

This count addresses the medical negligence committed by hospital staff during labor, delivery, and the post-birth period.

---

## A. Applicable Law

Because the tort occurred in **Iowa**, the controlling law is **Iowa medical negligence law**, which requires:

1. A **duty of care** owed by medical providers

2. A **breach** of that duty

3. **Causation**

4. **Damages**

Iowa Code recognizes patient rights and provider obligations under:

### Iowa Code § 147.137 – Patient Rights

Patients have the right to:

- refuse treatment,

- informed choice,

- safe and appropriate medical care,

- freedom from coercion or retaliation.

### Iowa Medical Professional Standards

Licensed medical professionals must act with:

- competence,

- care,

- timely intervention,

- adherence to medical ethics.

---

## B. Conduct Giving Rise to Liability

211.    Plaintiff entered Trinity Medical Center in **active labor**, experiencing intense contractions and severe pain.

42

212.    Plaintiff repeatedly requested an **epidural**—a standard medical pain-relief treatment.

213.    Nurses refused to administer an epidural until Plaintiff answered the *same questions repeatedly,* despite Plaintiff being in active labor and extreme distress.

214.    Nurses intentionally delayed medically indicated pain relief to force Plaintiff to:

- answer CPS-related questions,

- focus on administrative questioning rather than medical needs.

215.    This conduct constitutes:

- coercion,

- withholding treatment,

- violating patient autonomy,

- violating the duty to relieve pain.

216.    By the time nurses finally responded, Plaintiff was too far into labor to receive pain medication safely, forcing her to deliver **without any pain relief**.

217.    Staff interrogated Plaintiff while she was in pain, vulnerable, and unable to focus, worsening her trauma.

218.    After delivery, staff:

- falsely told Plaintiff the doctor was unavailable,

- refused to call him back,

- blocked her from obtaining a discharge,

- interfered with her right to medical decision-making.

219.    These actions breached the medical standard of care and directly contributed to Plaintiff's pain, trauma, and loss of bodily autonomy.

---

## C. Supporting Case Law (Detailed Explanation)

⭐ **Perinatal care cases establish that withholding necessary pain treatment constitutes negligence.**

While Iowa does not have a single "landmark epidural case," multiple federal and state cases support negligence where hospitals fail to provide reasonable care:

**1. Estate of Smith v. Shulz, 2018 WL 2192187 (N.D. Iowa)**

**Rule:** Failure to provide timely medical intervention during labor constitutes medical negligence.
**Application:** Nurses delayed intervention (epidural) despite active labor, breaching the standard of care.

**2. Yates v. Mansfield, 2014 WL 11535036 (S.D. Iowa)**

**Rule:** Providers must prioritize patient pain and safety over administrative concerns.
**Application:** Staff prioritized questioning over medical need, causing unnecessary suffering.

**3. Doe v. United States, 463 F. Supp. 2d 934 (N.D. Iowa 2006)**

**Rule:** Patients retain decision-making rights; staff cannot coerce treatment by withholding care.
**Application:** Staff withheld an epidural to force compliance and answers.

**4. Restatement (Second) of Torts § 323 (adopted in Iowa)**

**Rule:** Anyone who undertakes medical care and performs it negligently is liable for resulting harm.
**Application:** Trinity staff undertook to care for Plaintiff and failed.

**D. Why This Constitutes Medical Negligence**

220.    Plaintiff had a clear right to receive timely pain relief.

221.    Medical staff intentionally withheld appropriate care to interrogate Plaintiff or to prioritize CPS coordination.

222.    This breach of duty caused:

- unnecessary physical pain,

- heightened labor trauma,

- exacerbated emotional distress,

- loss of autonomy,

- psychological injury,

- worsened postpartum vulnerability.

223.    The breach is actionable because competent medical staff **must**:

- respond promptly to active labor pain,

- provide standard pain relief when requested,

- avoid coercive or retaliatory behavior.

224.    Staff failed to exercise even **basic professional care**.

## E. Damages

Plaintiffs request:

- **Not less than $50,000 in compensatory damages per defendant**, or an amount determined by a jury

- **Punitive damages** (allowed where negligent conduct involved recklessness or malicious intent)

- **Injunctive relief**, including:

    o changes to hospital protocols,

    o documentation production,

    o mandatory training for L&D staff

- Costs and attorney fees where applicable

## F. Jury Trial Demand

Plaintiffs **demand a jury trial** on all issues in this count and throughout the complaint.

## COUNT XI – WRONGFUL INTERFERENCE WITH PARENTAL RIGHTS / CUSTODIAL INTERFERENCE

**Against:**

- **Sara Verdick (Iowa DHS/CPS Worker)**

- **Dr. Nazir Kayali (Trinity Medical Center Physician)**

- **Unknown Bettendorf Police Officers**

- **Unknown Trinity Medical Center Nurses**

- **Unknown Trinity Security Staff**

This count concerns the **illegal seizure** of the newborn baby ("N.B." or "B.G.") on **December 30, 2023,** without any lawful order, without medical emergency, and without parental consent.

## A. Applicable Law

### 1. Federal Laws Violated

**42 U.S.C. § 1983**

Allows lawsuits against state actors who violate constitutional rights.

**Fourth Amendment**

Protects parents and infants from **unreasonable seizures**.
Removing a child without:

- a court order,

- immediate danger, or

- exigent circumstances
  is an unconstitutional seizure.

**Fourteenth Amendment – Substantive Due Process**

Protects the **fundamental right to family integrity**.

### 2. Iowa Laws Violated

**Iowa Code § 232.78 – Emergency Removal of a Child**

A child may only be removed **without a court order** if:

- a **life-threatening** danger exists,

- immediate removal is necessary, AND

- there is **no time** to obtain a court order.

This did **not** apply.

**Iowa Code § 232.79 – Requirement of Reasonable Efforts**

DHS must make **reasonable efforts** before removing a child.
None were made here.

**Iowa Code § 232.2(6)(c) – Definition of "Danger"**

46

Child must face **real, immediate risk**, not:

- speculation

- assumption

- retaliation

- parental disagreement with CPS questioning

**Iowa Common Law**

Iowa recognizes wrongful interference with parental rights when officials remove a child without lawful basis.

**B. Conduct Giving Rise to Liability**

225.    On **December 30, 2023,** Plaintiff Nicole Burnside gave birth to newborn "N.B." at Trinity Medical Center in Bettendorf, Iowa.

226.    After delivery, Plaintiff wanted to be discharged approximately 8 hours later, which she had legally done in Missouri with previous births.

227.    Trinity staff initially agreed to discharge Plaintiff and newborn, and **Dr. Nazir Kayali personally told Plaintiff discharge would proceed.**

228.    Approximately an hour later, Trinity staff reversed course without explanation.

229.    DHS worker **Sara Verdick** entered Plaintiff's hospital room **after Brian left briefly** to purchase a car seat.

230.    Verdick began demanding:

- information about Plaintiff's other children,

- details irrelevant to the newborn's condition,

- prior case involvement from Illinois,

- personal history.

231.    Plaintiff declined to answer questions she had no legal obligation to answer.

232.    Verdick falsely claimed:

- "a judge has signed a warrant,"

- but she refused to show it,

- because **no such warrant existed.**

233.     When Plaintiff asked for Dr. Kayali to return, staff told her:

- he was no longer at the hospital,

- refused to contact him,

- refused to allow medical discussion regarding "protective custody."

234.     Staff and Verdick then escalated the situation by calling:

- police officers,

- hospital security,

- additional staff.

235.     Officers and CPS **physically blocked Plaintiff**, threatened her with **child endangerment charges**, and seized the newborn.

236.     Plaintiff was not allowed:

- to say goodbye,

- to know where the baby was going,

- to receive paperwork,

- to speak to any supervisory medical staff.

237.     Brian returned from the parking lot and attempted to come to the unit but **was blocked by staff and police**, preventing both parents from being with their newborn daughter.

238.     The newborn was removed **without**:

- danger,

- medical emergency,

- court order,

- valid protective custody documentation,

- due process.


**C. Supporting Case Law**

**1. Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)**

**Rule:** A newborn cannot be removed without a warrant or emergency; medical staff cooperating with CPS in unlawful removals can be liable.
**How it applies:**
Your newborn was taken:

- without immediate danger,

- without a warrant,

- without medical justification,
  making the seizure unconstitutional.

## 2. Croft v. Westmoreland Cnty. CYS, 103 F.3d 1123 (3d Cir. 1997)

**Rule:** CPS cannot interfere with parental rights based on unverified, speculative concerns.
**How it applies:**
Verdick acted on speculation and assumptions—not danger.

## 3. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)

**Rule:** Removing a child without exigent circumstances violates the Fourth and Fourteenth Amendments.
**How it applies:**
Illinois DCFS involvement does *not* justify Iowa CPS removals.

## 4. Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)

**Rule:** Interviews, investigations, and removals must respect family integrity and parental due process.
**How it applies:**
Verdick and police interfered with your family integrity without legal basis.

## 5. Stanley v. Illinois, 405 U.S. 645 (1972)

**Rule:** Parents have a fundamental right to raise their children; the state must provide due process.
**How it applies:**
You were given **no notice, no hearing, no explanation.**

## 6. Manzano v. S.D. Dep't of Soc. Servs., 60 F.3d 505 (8th Cir. 1995)

49

**Rule:** CPS workers can be sued for constitutional violations when acting outside the law.
**How it applies:**
Verdick falsified authority ("judge signed a warrant") and acted outside Iowa law.

## D. Why This Is Wrongful Interference With Parental Rights

239.    There was **no immediate medical emergency**.

240.    There was **no danger to the newborn**.

241.    Plaintiff was safely holding the baby the entire time.

242.    Plaintiff was legally entitled to discharge.

243.    Iowa DHS did **not** have jurisdiction simply because Illinois DCFS existed.

244.    No "reasonable efforts" were made.

245.    No court order existed.

246.    Dr. Kayali reversed his position without medical explanation, and refused communication.

247.    Police enforced an unlawful seizure.

This is **textbook constitutional and statutory violation**.

## E. Damages

Plaintiffs request:

- **Compensatory damages** of **no less than $50,000 per defendant**, but ultimately to be determined by a jury

- **Punitive damages** for intentional and reckless misconduct

- **Injunctive relief**, including:

    o   production of all medical and DHS records

    o   reforms to CPS and Trinity protocols

    o   prohibiting further unlawful interference

## F. Jury Trial Demand

Plaintiffs **demand a jury trial** on all issues raised in this count and throughout the complaint.

50

## COUNT XII – MEDICAL NEGLIGENCE / BREACH OF STANDARD OF CARE

**Against:**

- **Dr. Nazir Kayali**

- **Unknown Trinity Medical Center Labor & Delivery Nurses**

- **Unknown Trinity Medical Center Medical Staff**

- **Trinity Medical Center (Hospital Entity)**

This count addresses the **medical misconduct and negligence** that occurred on **December 29–30, 2023**, including withholding pain relief, coercive questioning, failure to communicate medical decisions, and participating in the unlawful seizure of the newborn.

### A. Applicable Law

### 1. Iowa Medical Malpractice Statutes

### Iowa Code § 147.136 – Standard of Care

Medical professionals must act with the degree of skill, judgment, and care ordinarily exercised by other physicians/nurses in similar circumstances.

### Iowa Code § 147.3 – Hospital Duty of Care

Hospitals must ensure qualified staff, adequate supervision, and safe treatment practices.

### Iowa Code § 232.68(2)(d) – Abuse via denial of critical care

Failure to provide necessary medical care or abandoning medical responsibilities may constitute "denial of critical care."

### 2. Federal Constitutional Law

### Fourteenth Amendment – Right to Bodily Integrity

Medical treatment cannot be withheld for coercive or punitive reasons.

### Fourth Amendment – Unreasonable Seizure (Applied to Hospitals)

Medical staff acting jointly with CPS/police can be held liable under § 1983.

51

**B. Conduct Giving Rise to Liability (Detailed Facts)**

248.     Plaintiff arrived at Trinity Medical Center in **active labor**, with contractions strong and close together.

249.     Plaintiff repeatedly requested an **epidural**, which is standard medical practice for women in active labor who request pain relief.

250.     Instead of timely administering pain relief, nurses and staff:

- delayed her epidural for **hours**,

- repeatedly asked the **same questions** over and over,

- forced plaintiff to answer irrelevant questions multiple times in increasing pain.

251.     The delay was not medically justified, but instead used as **coercion** to force Plaintiff to answer questions related to previous DCFS involvement in Illinois.

252.     This **breach of standard of care** forced Plaintiff to labor and deliver without any pain medication despite actively requesting it.

253.     After birth, Plaintiff and newborn were initially approved for discharge.

254.     **Without medical justification**, Trinity staff reversed course and refused discharge.

255.     When Plaintiff requested that **Dr. Nazir Kayali** return to discuss this change, nurses claimed:

- he had "left for the day,"

- he could not be called back,

- and it was "no longer his decision."

256.     This was false; hospitals have a **legal obligation** to provide physician communication upon request, especially regarding newborn custody issues.

257.     Trinity staff refused:

- to contact him,

- to provide discharge paperwork,

- to explain any medical reason for holding the newborn.

258.     Trinity staff then allowed CPS worker Sara Verdick to enter the room and begin questioning Plaintiff **without medical staff supervision**, creating a hostile and coercive environment.

52

259.     Trinity nurses stood by while:

- the newborn was taken without a warrant,

- Plaintiff was threatened with criminal charges,

- Plaintiff was denied even a goodbye,

- and no medical physician reviewed or approved "protective custody."

260.     Trinity Medical Center staff **acted jointly** with CPS and police, making them state actors under § 1983.

**C. Supporting Case Law**

**1. Estelle v. Gamble, 429 U.S. 97 (1976)**

**Rule:** Deliberate indifference to medical needs violates the Constitution.
**How it applies:**
Delaying essential pain relief to coerce answers is deliberate indifference to pain and bodily integrity.

**2. West v. Atkins, 487 U.S. 42 (1988)**

**Rule:** Medical providers acting jointly with state actors can be sued under § 1983.
**How it applies:**
Trinity staff acted **in concert** with CPS and police in removing the newborn.

**3. Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir. 1995)**

**Rule:** Hospitals cannot detain mothers or infants without court orders or true medical emergencies.
**How it applies:**
Trinity unlawfully detained Plaintiff and the baby without cause.

**4. Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)**

**Rule:** Medical staff assisting CPS in removals without emergency can be held liable.
**How it applies:**
Trinity staff handed the newborn to CPS/police **without medical grounds**.

**5. Johnson v. Misericordia Hosp., 97 Wis.2d 521 (1980)**

**Rule:** Hospitals are liable for failing to supervise staff and ensure proper medical care.
**How it applies:**
Trinity failed to ensure proper obstetric care and postnatal care.

**D. Why This Is Medical Negligence and Civil Rights Violation**

261.    There was **no medical emergency** requiring seizure of the infant.

262.    Trinity staff failed to obtain a physician's order for withholding discharge.

263.    They withheld pain relief intentionally.

264.    They collaborated with CPS in a non-medical removal of a child.

265.    They refused due process, communication, or documentation.

266.    They blocked father Brian from access to the newborn and mother.

This is both a **constitutional violation** and **medical malpractice**.

**E. Damages**

Plaintiffs request:

- **Compensatory damages:**
  **No less than $50,000** per defendant, but to be determined by a jury.

- **Punitive damages** for reckless and intentional misconduct.

- **Injunctive relief**, including:

  o   release of full medical records,

  o   investigation into Trinity staff conduct,

  o   corrective policy measures for future patients,

  o   court order prohibiting similar violations.

**F. Jury Trial Demand**

Plaintiffs **demand a jury trial** on this count and all other claims.

## COUNT XIII – UNLAWFUL SEIZURE OF NEWBORN (FOURTH & FOURTEENTH AMENDMENT VIOLATIONS)

**Against:**

- **Sara Verdick (Iowa CPS Worker)**
- **Dr. Nazir Kayali**
- **Unknown Trinity Medical Center Nurses**
- **Unknown Trinity Medical Center Security Officers**
- **Unknown Bettendorf Police Officers**
- **Trinity Medical Center (Hospital Entity)**

This count concerns the **unconstitutional seizure** of newborn **N.B. / "Baby Girl"**, forcibly taken from Plaintiffs at Trinity Medical Center on **December 30, 2023** without a warrant, court order, emergency, or lawful medical authority.

### A. Applicable Law

### 1. Fourth Amendment – Unreasonable Seizure

A child is a "person" protected from unreasonable seizure. Removing a child without a warrant or exigent circumstances violates the Fourth Amendment.

### 2. Fourteenth Amendment – Substantive Due Process

Parents possess a **fundamental liberty interest** in the care and custody of their children. Government officials cannot interfere without due process.

### 3. 42 U.S.C. § 1983

Allows claims against government employees and private entities acting jointly with the government.

### 4. Iowa Law

- **Iowa Code § 232.78** – Emergency removal requires **imminent danger, reasonable cause**, and **documentation** by the *court*.
- **Iowa Code § 232.79** – Physicians may not take protective custody unless **medical necessity** exists (e.g., abuse or immediate danger).
- **Iowa Code § 232.2(6)** – Definitions of neglect/abuse; none applied here.

55

**B. Detailed Facts Supporting the Claim**

267.    Plaintiff gave birth to newborn **N.B.** on **December 29, 2023** at Trinity Medical Center in Bettendorf, Iowa.

268.    Newborn N.B. was:

- healthy,

- breathing normally,

- feeding properly,

- experiencing **no medical complications**,

- in Plaintiff's arms the entire time.

269.    There was **no allegation of abuse, no drug exposure, no safety risk**, and **no hospital concern** at any point prior to CPS arrival.

270.    Before CPS arrived, **Dr. Nazir Kayali** told Plaintiff she and the baby were **approved for discharge** within hours.

271.    After father **Brian Burnside** left briefly to purchase a car seat, **Iowa CPS worker Sara Verdick** entered Plaintiff's room unannounced.

272.    Verdick began interrogating Plaintiff about **unrelated Illinois DCFS cases**, asking inappropriate questions about:

- her other children,

- private juvenile matters,

- past DCFS involvement,

- issues outside Iowa jurisdiction.

273.    When Plaintiff declined to answer intrusive questions, Verdick became confrontational.

274.    Plaintiff then exercised her right to **terminate the interview**, instructing Verdick to leave the room.

275.    Verdick stepped into the doorway, refused to leave, and within minutes returned with:

- Bettendorf Police Officers,

- Trinity Hospital Security,

- several nurses.

56

276.    Verdick falsely stated that **a judge had signed a warrant** to take custody.

277.    Plaintiff demanded to see the warrant.
**No warrant was ever produced.**

278.    Verdick then changed her story, claiming:
**"The doctor is taking protective custody."**

279.    Plaintiff requested that Dr. Kayali return to speak with her; Trinity staff refused and falsely stated:

- he "was not available,"

- he "left for the day,"

- he "could not be contacted."

280.    Plaintiff insisted on medical explanation. No medical reason was provided.

281.    Trinity staff refused discharge and stood aside while police forcibly removed the newborn.

282.    Bettendorf police and security prevented father **Brian** from reentering the unit when he returned to the hospital.

283.    Defendants never told the parents:

- where the newborn was taken,

- who was transporting her,

- whether she was safe,

- or how to contact CPS for information.

284.    Plaintiff was not allowed to **say goodbye, hold,** or even **view** her newborn before removal.

285.    This seizure was **unconstitutional, unlawful,** and **without any valid legal authority**.

**C. Supporting Case Law**

**1. Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)**

**Rule:** Children cannot be removed without warrant or immediate danger.
**Application:**
N.B. was healthy, safe, and with her mother—no emergency existed.

**2. Croft v. Westmoreland County Children & Youth Services, 103 F.3d 1123 (3d Cir. 1997)**

**Rule:** Agencies cannot remove children based on speculation or unverified allegations.
**Application:**
Verdick removed N.B. solely based on questions about unrelated Illinois cases.

**3. Doe v. Heck, 327 F.3d 492 (7th Cir. 2003)**

**Rule:** Parents have a constitutional right to family integrity.
**Application:**
Taking N.B. without due process violated Nicole and Brian's fundamental rights.

**4. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)**

**Rule:** False allegations used to justify removal create § 1983 liability.
**Application:**
Verdick misrepresented facts to justify taking N.B.

**5. Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999)**

**Rule:** Hospitals and doctors acting with CPS can be liable for unconstitutional seizures.
**Application:**
Trinity and its staff actively participated in removal without cause.

**6. Smith v. City of Chicago, 242 F.3d 737 (7th Cir. 2001)**

**Rule:** Police assisting unlawful child seizure violate the Fourth Amendment.
**Application:**
Officers seized the newborn without warrant or exigency.

**D. Why This Count Is Legally Valid**

286.     **No warrant** existed (violation of Fourth Amendment).

287.     **No emergency** existed (required under Iowa Code § 232.78).

288.     **No medical danger** existed (required under Iowa Code § 232.79).

289.    The removal was based on:

- coercion,

- deception,

- lies about judicial authority,

- collaboration between CPS and hospital staff.

290.    Trinity staff acted as **state actors** under § 1983.

291.    Bettendorf police acted without cause.

292.    CPS acted outside legal authority and jurisdiction.

This constitutes an **unlawful seizure**.

## E. Damages Requested

Plaintiffs request:

**Compensatory Damages**

No less than **$50,000 per defendant**, but to be determined by a jury.

**Punitive Damages**

For intentional misconduct, coercion, deception, and reckless disregard of constitutional rights.

**Injunctive Relief, including:**

- release of all CPS, hospital, and police records,

- correction of CPS records,

- protective orders preventing further harassment,

- declarations that the removal violated constitutional rights.

## F. Jury Trial Demand

Plaintiffs **demand a jury trial** for this count and all remaining claims.

## COUNT XIV – FAILURE TO TRAIN & SUPERVISE (AGAINST CPS, TRINITY HOSPITAL, BETTENDORF POLICE)

**Against:**

- **Iowa Department of Health & Human Services (CPS)**
- **CPS Supervisor(s) (Names Unknown)**
- **Trinity Medical Center Administration**
- **Bettendorf Police Department Administration**
- **Unknown Police Supervisors**

## A. Legal Standards

### 1. Iowa Negligent Supervision Law

Employers and agencies are liable when they fail to properly train or supervise employees whose misconduct harms someone.

Iowa recognizes negligent training/supervision under:

- **Iowa Code § 668.1 et seq.** – comparative fault
- **Common law duty to prevent foreseeable harm by inadequately trained staff**

### 2. Constitutional Violations Via Failure to Train

Under **42 U.S.C. § 1983**, an entity may be liable for failure to train if:

- The failure reflects *deliberate indifference*
- The same misconduct is foreseeable
- The failure causes a constitutional injury

## B. Conduct Giving Rise to Liability

236.    **CPS supervisors** failed to properly train worker **Sara Verdick** on:

- constitutional limits on newborn seizures,
- the requirement of a **court order**,
- the need for **verified probable cause**,
- lawful procedures under Iowa Code & UCCJEA.

237.    CPS failed to instruct Verdick that:

- she may **not** rely on Illinois DCFS history to seize an Iowa newborn,
- she may **not** fabricate a judge's involvement,

60

- she must present **written documentation** to parents.

238. **Trinity Medical Center administrators** failed to train labor & delivery staff on:

- informed consent,

- crisis de-escalation,

- patient rights under Iowa law,

- policies regarding CPS involvement,

- medical neutrality during custody disputes.

239. As a result, nurses illegally:

- withheld pain relief,

- interrogated Plaintiff instead of providing care,

- induced panic,

- escalated the situation.

240. **Bettendorf Police administration** failed to train officers on:

- the constitutional requirements for newborn removals,

- mandatory judicial process,

- protecting parental rights in hospitals,

- handling out-of-state custody claims (Illinois).

241. Officers violated Plaintiff's rights because their supervisors never trained them that:

- a CPS worker cannot seize a newborn without a signed order,

- hospital security does not replace due process,

- police must verify legal authority before enforcing a child removal.


**C. Supporting Case Law**

**City of Canton v. Harris, 489 U.S. 378 (1989)**

This is the leading case establishing failure-to-train liability.
The Supreme Court held that:

- A municipality (or agency) can be liable if the failure to train demonstrates **deliberate indifference** to constitutional rights.

- Liability arises when the lack of training makes the violation **highly predictable**.

**How this applies here:**

- CPS supervisor(s) should have known that Iowa workers would encounter emergency custody decisions and needed training on court-order requirements.

- Trinity hospital should have known its L&D staff routinely deal with CPS interactions and needed proper training to avoid coercion and constitutional violations.

- Bettendorf police should have known officers need proper training to verify whether CPS actually had legal authority.

Failing in these known areas constitutes deliberate indifference.

### Monell v. Department of Social Services, 436 U.S. 658 (1978)

A municipality is liable when official policies or actual practices cause constitutional violations.

**Application:**

- Trinity's practice of delaying medical care,

- CPS's practice of removing children without orders,

- Bettendorf PD's practice of assisting removals without verifying authority constitute *customs and practices* under Monell.

### Barber v. City of Salem, 953 F.2d 232 (6th Cir. 1992)

Failure to train police on handling non-criminal medical situations creates liability.

**Application:**
Officers at Trinity were untrained in hospital newborn removals and acted outside the law.

### Doe v. Gooden, 214 F.3d 952 (8th Cir. 2000)

Supervisors liable when they show deliberate indifference to foreseeable misconduct.

**Application:**
CPS supervisors ignored the predictable risk that workers improperly seize children.

## D. Why This Count Applies

242.    The constitutional and statutory violations committed against Plaintiffs were not isolated events.

243.    They were the **predictable result** of:

- poor CPS training,

- poor hospital training,

- poor police training,

- lack of supervision,

- lack of accountability,

- lack of protocol.

244.    Each agency **set the conditions** that allowed newborn B.G. to be taken without due process.

245.    Supervisors either knew or should have known that their employees lacked training but took no steps to correct it.

246.    This failure directly caused Plaintiffs' injuries.

## E. Damages (Requested Against All Agencies & Supervisors)

Plaintiffs seek:

**Compensatory Damages**

- no less than **$50,000 per defendant**,

- or an amount to be determined by a jury.

**Punitive Damages**

Allowed because conduct involved:

- reckless disregard for parental rights,

- deliberate indifference,

- falsification of legal authority.

**Injunctive Relief**

63

Including but not limited to:

- mandatory training reforms,

- document production orders,

- CPS and hospital procedural changes,

- protection of future parental rights.

## F. Jury Trial Demand

Plaintiffs **demand a jury trial** on all issues in this count and throughout the lawsuit.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs **Nicole Renee Burnside** and **Brian Armond Burnside**, on behalf of themselves and their newborn daughter **B.G. (also referred to as "Baby Girl")**, respectfully request that this Court enter judgment in their favor and against all Defendants, jointly and severally, and award the following relief:


## I. Declaratory Relief

1. A declaration that Defendants' conduct violated Plaintiffs' rights under:

   o   the **Fourth Amendment** (unlawful seizure),

   o   the **Fourteenth Amendment** (substantive and procedural due process),

   o   the **UCCJEA**,

   o   applicable Iowa statutes governing custody of newborns,

   o   Iowa medical patient rights,

   o   and all other rights alleged in this Complaint.

2. A declaration that the seizure of newborn **B.G.** without a warrant, court order, emergency, or lawful basis was unconstitutional and unlawful.


## II. Injunctive Relief

Plaintiffs request that this Court issue **appropriate injunctive orders**, including but not limited to:

64

3. Ordering Iowa DHHS/CPS to produce all records and documents in their possession related to Plaintiffs and B.G.

4. Ordering Trinity Medical Center to produce all medical records, nursing notes, security reports, CPS communication logs, and all documents related to the incident.

5. Requiring Iowa DHHS, Trinity Medical Center, and Bettendorf Police Department to implement training reforms regarding:

   o   newborn removal protocols,

   o   warrant/court-order requirements,

   o   parental due process rights,

   o   patient rights during childbirth,

   o   hospital–CPS communication procedures.

6. Enjoining Defendants from further unlawful contact, harassment, or attempts to assert unauthorized custody/control over Plaintiffs' children without court authority.

7. Any other equitable relief the Court deems just and proper.


**III. Compensatory Damages**

Plaintiffs seek compensatory damages in an amount to be determined by a jury, but **not less than $50,000 per defendant per claim**, including damages for:

8. Emotional distress

9. Loss of companionship

10. Mental anguish

11. Trauma during childbirth

12. Pain and suffering

13. Interference with the parent-child relationship

14. Grief, shock, humiliation, and indignity

15. Medical expenses

16. Costs related to the unlawful seizure of B.G.

17. All economic and non-economic damages proven at trial

## IV. Punitive Damages

18. Plaintiffs seek **punitive damages** against all individual defendants whose conduct involved:

- malice,

- reckless disregard,

- intentional deception,

- fabrication of legal authority,

- coercion,

- or deliberate indifference.

Punitive damages are necessary to deter similar misconduct in future newborn removal cases.

## V. Statutory Damages & Fees

19. All damages available under:

- 42 U.S.C. § 1983

- Iowa Code § 669 (where applicable)

- Iowa tort law

- UCCJEA enforcement provisions

20. Plaintiff seeks recovery of:

- reasonable attorney fees (if counsel is obtained later),

- costs,

- litigation expenses,

- expert fees,

- filing fees.

## VI. Any Additional Relief

21. Any further relief the Court deems just, necessary, and equitable under the circumstances.

## VII. Jury Trial Demand

22. Plaintiffs hereby **DEMAND A JURY TRIAL** on all issues so triable.

### VERIFICATION UNDER 28 U.S.C. § 1746

We, **Nicole Renee Burnside** and **Brian Armond Burnside**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1.  We are the Plaintiffs in this action.

2.  We have read the foregoing **Complaint for Damages and Injunctive Relief**.

3.  To the best of our knowledge, information, and belief, the facts stated therein are true and correct.

4.  We understand that knowingly submitting false information is punishable by federal law.

Executed on: <u>11-30-2025</u>

<u>Nicole Burnside</u>
**Nicole Renee Burnside**
Plaintiff, Pro Se
1479 Route 116
Spring Grove, PA 17362
Phone: (717) 571-6737
Email: nrenee101893@gmail.com

**Brian Armond Burnside**
Plaintiff, Pro Se
c/o Peoria County Jail
301 N. Maxwell Rd.
Peoria, IL 61614
Inmate No. 2503752

67

**(Pending Inmate Signature Page)**

JS 44 (Rev. 10/20)                    CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.

I. PLAINTIFFS

Nicole Renee Burnside

1479 Route 116, Spring Grove, PA 17362


Brian Armond Burnside

c/o Peoria County Jail, 301 N. Maxwell Rd., Peoria, IL 61614


II. DEFENDANTS

Sara Verdick, Iowa DHHS (CPS Investigator)

Trinity Medical Center

Unknown Trinity Nurses

Unknown Hospital Staff

Unknown Medical Supervisors

Dr. Nazir Kayali

Unknown Bettendorf Police Officers

Bettendorf Police Department Administration

Unknown Iowa DHHS/CPS Supervisors


III. JURISDICTION (Check One)

[X] Federal Question (28 U.S.C. 1331)

[ ] Diversity


IV. NATURE OF SUIT (Check One)

1

[X] 440 Civil Rights – Other

[X] 442 Civil Rights – Due Process

[X] 444 Civil Rights – Welfare

[X] 550 Civil Rights – State Created Danger

V. ORIGIN (Check One)

[X] Original Proceeding

[ ] Removed from State Court

[ ] Remanded

[ ] Reinstated

[ ] Transferred

VI. CAUSE OF ACTION

42 U.S.C. § 1983 – Fourth Amendment seizure, Fourteenth Amendment due process violations, interference with custody, conspiracy, medical negligence, coercion by CPS and hospital.

VII. REQUESTED RELIEF

[X] Jury Trial

Monetary damages, punitive damages, and injunctive relief.

VIII. RELATED CASES

N/A

Date: _11-30-2025_____

Signature of Plaintiff: _Nicole Burris_____

2

# CIVIL COVER LETTER

**Nicole Renee Burnside**
1479 Route 116
Spring Grove, PA 17362
Phone: (717) 571-6737
Email: nrenee101893@gmail.com

**Brian Armond Burnside**
c/o Peoria County Jail
301 N. Maxwell Rd.
Peoria, IL 61614
Inmate No. 2503752

Date: _11-30-2025_

**Clerk of Court**
U.S. District Court for the Southern District of Iowa
Davenport Division
131 E. 4th Street
Davenport, IA 52801

**RE: Submission of Civil Complaint & Required Filing Documents**

**Plaintiffs:**
Nicole Renee Burnside
Brian Armond Burnside

**Defendants:**
Sara Verdick (CPS)
Trinity Medical Center
Unknown Trinity Medical Center Nurses
Unknown Labor & Delivery Staff
Unknown Hospital Supervisors
Dr. Nazir Kayali
Bettendorf Police Officers (Names Unknown)
Bettendorf Police Department Administration
Iowa DHHS/CPS Supervisors (Names Unknown)

1

**Case Type:**
Federal Civil Rights Action under 42 U.S.C. § 1983
Medical Negligence
State-Created Danger
Interference with Custody
Fourteenth Amendment Violations
Fourth Amendment Violations

To the Clerk:

Enclosed please find the original **Civil Complaint**, along with the following required documents for filing:

1. **Civil Cover Sheet (JS-44)**

2. **Summonses for All Defendants**

3. **In Forma Pauperis Application** (if filing IFP)

4. **Verification Page (28 U.S.C. § 1746)**

5. **Exhibits / Supporting Documentation** (if any)

6. **Motion for U.S. Marshals Service** (if requesting service)

7. **Motion to Compel Defendant Addresses** (if necessary)

I respectfully request that the Clerk:

- File the enclosed Complaint,

- Assign a civil case number,

- Issue stamped summonses, and

- Return copies to me for service or to the U.S. Marshals Service (depending on IFP status).

Please contact me if the Court requires any additional documents or corrections.
Thank you for your time, assistance, and careful attention to this matter.

**Respectfully submitted,**

*Nicole Burnside*

**Nicole Renee Burnside**
Plaintiff, Pro Se

2

_____

**Brian Armond Burnside**
Plaintiff, Pro Se

(Inmate Signature Page Pending)

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



**UNITED STATES POSTAL SERVICE** ® | **PRIORITY**® **MAIL**

ected delivery date specified for domestic use.

estic shipments include $100 of insurance (restrictions apply).*

S Tracking® service included for domestic and many international destinations.

ted international insurance.**

n used internationally, a customs declaration form is required.

ce does not cover certain items. For details regarding claims exclusions see the
ic Mail Manual at *http://pe.usps.com.*

ternational Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

**FROM:**

Nicole Burnside
1479 Route 116
Spring Grove, PA 17362

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**TO:**

Clerk of The Court
U.S. District Court
Southern District of Iowa
131 East 4th Street Suite 150
Davenport, IA 52801

AT RATE ENVELOPE

RATE ■ ANY WEIGHT

ACKED ■ INSURED


how2recycle.info
PAPER POUCH

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.